1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DANIEL MICSA,

11            Plaintiff,                    No. CIV S-06-2832 DAD

12        vs.

13   MICHAEL J. ASTRUE,               ORDER
     Commissioner of Social Security,[1]
14
              Defendant.
15   _____/

16            This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment or remand, and defendant's cross-motion for

18   summary judgment.  For the reasons explained below, plaintiff's motion for remand will be

19   granted, the decision of the Commissioner of Social Security (Commissioner) will be reversed,

20   and the matter will be remanded for further proceedings consistent with this order.

21                          **PROCEDURAL BACKGROUND**

22            Plaintiff Daniel Micsa applied for Supplemental Security Income (SSI) benefits

23   under Title XVI of the Social Security Act (the Act) on November 21, 2003.  (Transcript (Tr.) at

24   _____

25        [1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
     Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ.
26   P. 25(d)(1).

208-11.)  Plaintiff claimed disability based on degenerative spinal disease, psychosis, a personality disorder, a speech impediment, and a hand injury.  (Tr. at 214-15.)  Plaintiff's application was denied initially on March 5, 2004.  (Tr. at 193, 195-99.)  Plaintiff requested reconsideration on the ground that he has severe mental problems and learning disabilities.  (Tr. at 200.)  Upon reconsideration, the Commissioner denied plaintiff's application on October 21, 2004.  (Tr. at 194, 201-06.)

Pursuant to plaintiff's timely request for a hearing before an administrative law judge (ALJ), plaintiff, represented by counsel, appeared and testified at a hearing on August 8, 2005.  (Tr. at 207, 867-78.)  In a decision dated September 15, 2005, the ALJ determined that plaintiff was not disabled through the date of the decision.  (Tr. at 18-26.)  The ALJ entered the following findings:

1.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.  The claimant's chronic low back pain and bipolar affective disorder, mixed type are considered "severe" based on requirements in the Regulations 20 CFR § 416.920(c).

3.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.  The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5.  The claimant has the following residual functional capacity: perform a slightly modified range of medium work, lifting 50 pounds occasionally and 25 pounds frequently, walk/stand six hours, sit six hours, frequently crawling and occasionally perform other postural activities, and mentally perform simple routine tasks with decreased public contact.  He has no manipulative, visual, communicative, environmental, or other mental limitations.

6.  The claimant has no past relevant work (20 CFR § 416.965).

7.  The claimant is a 'younger individual' (20 CFR § 416.963).

8.  The claimant has 'a high school (or high school equivalent) education' (20 CFR § 416.964).

1    9.  The claimant has the residual functional capacity to perform
     substantially all of the full range of medium work (20 CFR §
2    416.967).

3    10. Based on an exertional capacity for medium work, and the
     claimant's age, education, and work experience, Medical-
4    Vocational Rule 203.28, Appendix 2, Subpart P, Regulations No. 4
     would direct a conclusion of "not disabled."
5
     11. The claimant's capacity for medium work is substantially intact
6    and has not been compromised by any nonexertional limitations.
     Accordingly, using the above-cited rule(s) as a framework for
7    decision-making, the claimant is not disabled.

8    12. The claimant was not under a "disability," as defined in the
     Social Security Act, at any time through the date of this decision
9    (20 CFR § 416.920(g)).

10   (Tr. at 25-26.)

11          Plaintiff requested review of the ALJ's hearing decision and submitted additional

12   evidence concerning his mental health problems to the Appeals Council.  (Tr. at 9-14, 861-66.)

13   On November 2, 2006, the Appeals Council considered plaintiff's additional evidence but denied

14   plaintiff's request for review.  (Tr. at 9-12.)  Plaintiff sought judicial review pursuant to 42

15   U.S.C. § 405(g) by filing the complaint in this action on December 14, 2006.

16                                    **LEGAL STANDARD**

17          The Commissioner's decision that a claimant is not disabled will be upheld if the

18   findings of fact are supported by substantial evidence in the record as a whole and the proper

19   legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

20   (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

21   The findings of the Commissioner as to any fact, if supported by substantial evidence, are

22   conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

23   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

24   Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

25   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

26   (1971)).

1       A reviewing court must consider the record as a whole, weighing both the

2   evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

3   F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

4   of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

5   substantial evidence supports the administrative findings, or if there is conflicting evidence

6   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

7   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

8   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

9   1335, 1338 (9th Cir. 1988).

10      In determining whether or not a claimant is disabled, the ALJ should apply the

11  five-step sequential evaluation process established under Title 20 of the Code of Federal

12  Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42

13  (1987).  This five-step process can be summarized as follows:

14          Step one:  Is the claimant engaging in substantial gainful activity?
            If so, the claimant is found not disabled.  If not, proceed to step
15          two.

16          Step two:  Does the claimant have a "severe" impairment?  If so,
            proceed to step three.  If not, then a finding of not disabled is
17          appropriate.

18          Step three:  Does the claimant's impairment or combination of
            impairments meet or equal an impairment listed in 20 C.F.R., Pt.
19          404, Subpt. P, App. 1?  If so, the claimant is automatically
            determined disabled.  If not, proceed to step four.
20
            Step four:  Is the claimant capable of performing his past work?  If
21          so, the claimant is not disabled.  If not, proceed to step five.

22          Step five:  Does the claimant have the residual functional capacity
            to perform any other work?  If so, the claimant is not disabled.  If
23          not, the claimant is disabled.

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25      The claimant bears the burden of proof in the first four steps of the sequential

26  evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

1  sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

2  (9th Cir. 1999).

3                                                **APPLICATION**

4                  Plaintiff seeks summary judgment or, in the alternative, remand for further

5  proceedings on the ground that the ALJ committed two errors in reaching his decision that

6  plaintiff is not disabled.  First, plaintiff argues that the ALJ would have found plaintiff disabled

7  by a listed impairment, had he given proper consideration to the opinions of two consultative

8  examiners.  Second, plaintiff contends that the ALJ erroneously relied on the Medical Vocational

9  Guidelines, i.e., the grids, instead of utilizing a vocational expert to determine the effect of

10 plaintiff's nonexertional limitations on his ability to work.  Both arguments are addressed below.

11 **I. Whether the ALJ Properly Considered the Opinions of Two Consultative Examiners**

12                 Plaintiff's first argument challenges the ALJ's analysis at step three of the five-

13 step sequential evaluation process, i.e., the ALJ's determination that plaintiff's impairments or

14 combination of impairments do not meet or equal any impairment listed in the regulations.

15 Plaintiff contends that the opinions of consultative examiners Rodney Collins, M.D., and Travis

16 Owens, Psy.D., show that plaintiff met the criteria for listed impairment 12.04 and the ALJ either

17 misconstrued the two opinions or failed to consider them when he determined that plaintiff does

18 not meet the B criteria for 12.04.

19                 At step three of the sequential evaluation process, a claimant who demonstrates

20 that he suffers from a severe impairment that is either listed in Appendix 1or equal to a listed

21 impairment will be found disabled without regard to age, education, and work experience.  See

22 20 C.F.R. §§ 404.1525(a) & 416.925(a).  The Listing of Impairments in the appendix "describes

23 for each of the major body systems impairments that [are] consider[ed] to be severe enough to

24 prevent an individual from doing any gainful activity, regardless of his or her age, education, or

25 work experience." 20 C.F.R. §§ 404.1525(a) & 416.925(a).  An impairment is not considered

26 listed merely because the claimant has the diagnosis of a listed impairment.  Rather, the

1   impairment must satisfy all medical criteria described in the listing.  20 C.F.R. §§ 404.1525(d) &

2   416.925(d); Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to qualify for benefits

3   by showing that his impairment matches a listing, it must meet *all* of the specified medical

4   criteria."); Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990).

5         The claimant bears the burden of establishing a prima facie case of disability

6   under the Listing of Impairments.  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (citing

7   Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).  See Yuckert, 482 U.S. at 146 n.5

8   (claimant bears the burden of proof in the first four steps of the sequential evaluation process).

9   To meet the burden, a claimant must provide "complete and detailed objective medical reports of

10   [his] condition from licensed medical professionals" to show that he is disabled.  Meanel v.

11   Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  See also 20 C.F.R. § 416.913.

12         Here, plaintiff asserts that medical evidence of record establishes that his mental

13   impairments met the requirements of listing 12.04.  Listings for mental impairments are grouped

14   in nine diagnostic categories in § 12.00 of Appendix 1.  Section 12.04 outlines the requirements

15   for impairments in the diagnostic category of affective disorders:

16
17         *Affective Disorders*:  Characterized by a disturbance of
        mood, accompanied by a full or partial manic or depressive
        syndrome.  Mood refers to a prolonged emotion that colors the
        whole psychic life; it generally involves either depression or
18         elation.

19         The required level of severity for these disorders is met
        when the requirements in both A and B are satisfied, or when the
20         requirements in C are satisfied.

21   20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.04.  It is undisputed that plaintiff meets the

22   requirements in 12.04A due to his bipolar affective disorder, mixed type[2] and does not meet the

23   requirements in C.  (Tr. at 23.)  The issue is whether plaintiff meets the requirements in B.

24   ————————————————

25       [2]  The requirements of A can be met by showing medically documented persistence,
either continuous or intermittent, of bipolar syndrome with a history of episodic periods
manifested by the full symptomatic picture of both manic and depressive syndromes, currently
26   characterized by either or both syndromes.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.04.A.3.

1    To satisfy the requirements in B, a claimant's affective disorder must result in at

2  least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration[.]

Listing 12.04.B. In the present case, the ALJ found no evidence that plaintiff's bipolar affective

disorder has resulted in episodes of decompensation as described in B4 and found only moderate

limitations with regard to the other three criteria. (Tr. at 23.)

Plaintiff argues that he has marked difficulties in maintaining social functioning

and in maintaining concentration, persistence, and pace. For evidence of marked difficulties in

social functioning, plaintiff cites Dr. Owens' indication of marked limitations in interpersonal

relationships and social functioning, and Dr. Collins' indications that plaintiff is difficult to

understand, does not have recreational interests or activities, does not socialize, has only a few

friends he associates with, and is not involved in church, church groups, social organizations, or

clubs. As evidence of marked difficulties in maintaining concentration, persistence, and pace,

plaintiff cites Dr. Owens' opinion that plaintiff appears to be markedly impaired in his ability to

respond appropriately to co-workers, supervisors, and the public; respond appropriately to usual

work situations; deal with changes in a routine work setting; and maintain persistence and pace.

Plaintiff also cites Dr. Collins' opinion that plaintiff would not be able to complete a normal

workday or workweek without interruptions due to his psychiatric condition, would not be able

to deal with the usual stressors encountered in competitive work, would not be able to work or

perform work activities on a consistent basis, would not be able to accept instructions from

supervisors, and would not be able to interact with co-workers and/or the public.

The record reflects that Travis Owens, Psy.D., is a clinical psychologist who

produced a psychological report dated January 4, 2001, after he attempted to interview plaintiff

7

1   in December 2000 and administered tests on January 4, 2001.  (Tr. at 167-70.)  Rodney Collins,

2   M.D., saw plaintiff for a comprehensive psychiatric examination on September 18, 2004.  (Tr. at

3   287-90.)  The ALJ's decision does not mention Dr. Owens' report but discusses Dr. Collins'

4   evaluation.  With regard to the latter, the ALJ determined that Dr. Collins' examination did not

5   fully support plaintiff's mental complaints.  (Tr. at 20, 22.)  The ALJ decided not to give

6   controlling weight to Dr. Collins' medical opinions after he found that the determinations of the

7   agency's non-examining physicians appeared to be more reliable in establishing plaintiff's

8   residual functional capacity and were supported by Dr. Selcon's internal medicine consultative

9   examination, by treating records, and by plaintiff's own daily activities.  (Tr. at 23.)

10          Defendant argues that it was proper for the ALJ not to consider Dr. Owens'

11  January 4, 2001 report for purposes of plaintiff's current disability application.  An application

12  for SSI disability benefits may be granted only as of the month after the month in which the

13  application was filed.  For the plaintiff in this case, SSI benefits granted on the basis of his

14  November 2003 application could not have been granted for a time period prior to December

15  2003.  See 20 C.F.R. § 416.335.  Defendant cites the following facts:  plaintiff previously applied

16  for SSI benefits on November 22, 1999 (tr. at 55-59); the 1999 application was denied initially in

17  2000 and upon reconsideration on January 18, 2001 (tr. at 41-52); the agency specifically

18  considered Dr. Owens' report in denying plaintiff's application upon reconsideration (tr. at 49-

19  52); although plaintiff submitted a timely request for a hearing concerning the denial of his 1999

20  application (tr. at 53), he failed to appear at the scheduled hearing and did not provide a reason

21  for his failure to appear (tr. at 192); on March 19, 2002, the ALJ dismissed plaintiff's request for

22  a hearing on the 1999 application for SSI and affirmed the agency's denial of the 1999

23  application (tr. at 190-92); plaintiff did not appeal the dismissal of his hearing request, and the

24  Appeals Council did not vacate the dismissal on its own motion.  In light of this history,

25  defendant argues that it was proper for the ALJ not to consider the Owens report in deciding

26  plaintiff's 2003 SSI application.  The report had already been considered in determining that

plaintiff was not disabled pursuant to his 1999 application, and the latter determination became final and was binding.  Plaintiff filed no reply to defendant's argument.  The court is persuaded that the ALJ properly disregarded Dr. Owens 2001 report for purposes of considering plaintiff's 2003 application for SSI.

Defendant also argues persuasively that the ALJ reasonably declined to accord significant weight to the restrictive functional assessment of plaintiff made by Dr. Collins because the assessment was not supported by objective clinical findings and was inconsistent with substantial evidence of record.  Defendant notes that Dr. Collins reported primarily normal findings, and the atypical clinical findings were limited to plaintiff's speech difficulty, tangential and circumstantial thought processes, decreased concentration, and limited insight and judgment. (Tr. at 288-89.)  It was Dr. Collins' opinion that plaintiff's condition would improve significantly with appropriate treatment.  (Tr. at 290.)

"To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31).  In the present case, the ALJ found that Dr. Collins' opinion was contradicted by the opinion of Sanford Selcon, M.D., a consultative examining doctor who performed a complete internal medicine evaluation of plaintiff ten days after Dr. Collins conducted a psychiatric examination of plaintiff.[3]  (Tr. at 20.)  Although Dr. Selcon found that plaintiff had severe mental health issues he did not include any nonexertional limitations in his functional assessment of plaintiff.  (Tr. at 295.)  In addition, the ALJ found that Dr. Collins' medical opinions were not supported by treating source records and were contradicted by plaintiff's daily activities.  (Tr. at 23-24.)  Thus, the ALJ stated clear

---

[3]  Medical evidence from a physician who is not a mental health specialist "constitutes 'competent psychiatric evidence'" and may not be discredited on the ground that he is not a psychiatrist.  Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995).  A treating physician's opinion as to the combined impact of the claimant's limitations–both physical and mental–is entitled to special weight.  Id.

and convincing reasons for declining to give controlling weight to Dr. Collins' opinion with regard to plaintiff's functional capacity.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (holding that an ALJ is not required to accept the opinion of any physician, including a treating physician, if the opinion is brief, conclusory, and inadequately supported by clinical findings).

Moreover, the court is unable to find that Dr. Collins' opinion establishes a prima facie case of disability under listing 12.04.  On the one hand, Dr. Collins opined that plaintiff would not be able to complete a normal workday or workweek without interruptions due to his psychiatric condition, would not be able to deal with the usual stressors encountered in competitive work, could not perform work activities on a consistent basis, could not accept instructions from supervisors, and could not interact with co-workers or the public.  (Tr. at 290.) On the other hand, Dr. Collins (1) noted that plaintiff took a bus to the evaluation, arrived on time, and was calm and cooperative in the waiting area; (2) found plaintiff somewhat difficult to understand but described plaintiff's speech impediment as mild and his tone as normal; (3) described plaintiff's level of social functioning as limited but did not cite any marked difficulties; (4) found plaintiff's concentration, persistence, and pace limited but specified "in terms of reading books and magazines"; and (5) concluded that plaintiff's abstract thinking and his insights and judgments were limited but did not note any marked difficulties.  (Tr. at 287-89.) These minimal clinical findings and conclusory opinions do not establish that plaintiff's affective disorder resulted in marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace.  Thus, plaintiff cannot rely on Dr. Collins' opinion to meet his burden of demonstrating that his severe mental impairment met the requirements of listing 12.04.

For the reasons explained above, the court finds no error with regard to the ALJ's consideration of the opinions of consultative examiners Owens and Collins.  Plaintiff is not entitled to summary judgment on this claim.

1    **II.  Whether the ALJ Should Have Utilized a Vocational Expert Instead of the Grids**

2            If the sequential evaluation process reaches the fifth and final step, the

3    Commissioner satisfies his burden of showing that the claimant can perform other types of work

4    in the national economy, given the claimant's residual functional capacity, age, education, and

5    work experience, by (1) applying the Medical-Vocational Guidelines (the grids), if appropriate,

6    or (2) taking the testimony of a vocational expert.  Burkhart, 856 F.2d at 1340 (citing Desrosiers

7    v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988)); Polny v. Bowen, 864

8    F.2d 661, 663-64 (9th Cir. 1988).

9            The grids are designed to show available work in the national economy for

10   individuals with exertional (i.e., strength) limitations, as impacted by the factors of age,

11   education, and work experience.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d) & (e).  The

12   grids may be used to direct a conclusion as to whether work exists that the claimant could

13   perform if the grids "'accurately and completely describe the claimant's abilities and

14   limitations.'"  Burkhart, 856 F.2d at 1340 (quoting Jones v. Heckler, 760 F.2d 993, 998 (9th Cir.

15   1985)).  See also Reddick, 157 F.3d at 729.  When a claimant's nonexertional limitations are

16   sufficiently severe that they significantly limit the range of work otherwise permitted by the

17   claimant's exertional limitations, the grids are not applicable and the ALJ must introduce the

18   testimony of a vocational expert or other evidence that jobs exist in the economy which the

19   claimant can obtain and perform.  Burkhart, 856 F.2d at 1340; Desrosiers, 846 F.2d at 577.  See

20   also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983); Tackett, 180 F.3d at 1101-02; Cooper v.

21   Bowen, 815 F.2d 557, 560 (9th Cir. 1987).

22           Here, plaintiff argues that the ALJ should have used a vocational expert to

23   determine the effect of his nonexertional limitations on the ability to work.  The court agrees.

24   The ALJ determined that plaintiff has two severe impairments:  chronic low back pain and

25   bipolar affective disorder, mixed type.  (Tr. at 25.)  The ALJ accepted the state agency's

26   determination that plaintiff's mental impairment limits him to performing "simple routine tasks

1   with decreased public contact." (Tr. at 20, 23.)  Although the ALJ acknowledged that the grids

2   may be used to direct an unfavorable decision only if the claimant has the exertional residual

3   functional capacity to perform substantially all of the primary strength demands required by work

4   at the given level of exertion "and there are no nonexertional limitations," he found that plaintiff

5   could perform substantially all of the requirements of medium work and concluded that there are

6   approximately 2,500 sedentary, light, and medium occupations at the unskilled level, each

7   representing numerous jobs in the national economy and all capable of being mastered after a

8   short demonstration or learned within 30 days.  (Tr. at 24-25.)

9        The ALJ attempted to avoid the simple task of hearing testimony from a

10  vocational expert by disregarding plaintiff's nonexertional limitations on the ground that "the

11  primary work functions in the bulk of unskilled work relate to working with things rather than

12  with people or data." (Tr. at 23-25.)  The conclusion is both unsupported and illogical.  Plaintiff

13  is limited to simple, routine tasks and decreased public contact because of his bipolar affective

14  disorder.  These are nonexertional limitations that reduce the number of jobs available to

15  plaintiff.  See Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) (recognizing that

16  whether unskilled work involves simple and repetitive tasks depends on the level of reasoning

17  required by the work).  This is not a case in which the ALJ relied upon strong and substantial

18  evidence in concluding that plaintiff's mental impairment and associated limitations would not

19  reduce his available occupational base more than marginally.  See Ortiz v. Sec'y of Health &

20  Human Servs., 890 F.2d 520, 526 (1st Cir. 1989); Brown v. Apfel, 71 F. Supp. 2d 28, 37 (D.R.I.

21  1999), aff'd, 230 F.3d 1347 (1st Cir. 2000); cf. Guyton v. Apfel, 20 F. Supp. 2d 156, 162 (D.

22  Mass. 1998).  Rather, the ALJ simply concluded that such was the case.

23        The court finds that plaintiff's nonexertional limitations compromise his ability to

24  perform work at all exertional levels, and those limitations may significantly erode the unskilled

25  occupational base available to him.  Because the grids do not accurately and completely describe

26  plaintiff's abilities and limitations, testimony from a vocational expert is necessary.  See Holohan

v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1156 n.10 (9th Cir. 1989) (holding that if the claimant is not capable of doing the full range of medium work because of a nonexertional impairment, the ALJ cannot rely solely on the grids to direct a finding of not disabled). See also Carr v. Sullivan, 772 F. Supp. 522, 529 (E.D. Wash. 1991) ("A severe mental impairment necessarily creates limitations in functional capacity. . . ."). While it is possible that a vocational expert may testify that there are a significant number of jobs in the economy which plaintiff can perform, no such testimony was taken, necessitating remand.

Plaintiff's motion in the alternative for remand will be granted on the claim that the ALJ should have used a vocational expert at step five of the sequential evaluation. The court notes that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling No. 85-15, 1985 WL 56857, at *4. The record reflects that plaintiff has limitations in several of these areas, and testimony should be elicited from the vocational expert as to all such limitations.

## CONCLUSION

The Commissioner's decision at the fifth step in the sequential evaluation process is not supported by substantial evidence in the record as a whole, and the proper legal standards were not applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). On remand, an ALJ must reconsider whether plaintiff is capable of performing any work in the national economy. The ALJ must question a vocational expert in a manner that properly takes into account all limitations on plaintiff's abilities to engage in various work-related mental functions. See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (explaining that testimony from a vocational expert was necessary because the claimant suffered from a severe mental impairment).

1            Accordingly, IT IS ORDERED that:

2            1.  Plaintiff's motion in the alternative for remand is granted on the claim that the

3    ALJ should have used a vocational expert to determine the effect of nonexertional limitations on

4    the work that plaintiff can perform;

5            2.  Defendant's cross-motion for summary judgment is denied;

6            3.  The decision of the Commissioner is reversed, and this case is remanded for

7    further proceedings consistent with the analysis set forth herein.  See 42 U.S.C. § 405(g),

8    Sentence Four.

9    DATED: August 18, 2008.

10

11   _____

12   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

13   DAD:kw
     Ddad1/orders.socsec/micsa2832.order

14

15

16

17

18

19

20

21

22

23

24

25

26